UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JULIA M. VALERIO,

                        Plaintiff,

      v.                                                    Case # 19-CV-609-FPG
                                                       DECISION AND ORDER

COMMISSIONER OF SOCIAL SECURITY,

                        Defendant.

## INTRODUCTION

Plaintiff Julia M. Valerio brings this action pursuant to Title XVI of the Social Security Act seeking review of the denial of her application for Supplemental Security Income ("SSI").

Plaintiff protectively applied for SSI on April 22, 2015, alleging disability due to neuropathy of the feet, problems with her heart, chest pain, and hyperactive thyroid. Tr.[1] 56, 125-30, 142, 143. After the Social Security Administration ("SSA") denied her application, Plaintiff testified at a hearing before an Administrative Law Judge ("ALJ"). Tr. 26-55. On August 1, 2017, the ALJ issued an unfavorable decision. Tr. 11-25. After the Appeals Council denied Plaintiff's request for review, the SSA's decision became final and Plaintiff appealed to this Court. ECF No. 1. This Court has jurisdiction to review the SSA's final decision pursuant to 42 U.S.C. § 1383(c)(3).

Both parties moved for judgment on the pleadings pursuant to Federal Rule of Civil Procedure 12(c). ECF Nos. 11, 19. For the following reasons, Plaintiff's motion is GRANTED, the Commissioner's motion is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings.

---

[1] "Tr." refers to the administrative record in this matter. ECF No. 8.

**LEGAL STANDARD**

**I.  District Court Review**

When a district court reviews a final decision of the SSA, it does not "determine de novo whether [the claimant] is disabled." *Schaal v. Apfel*, 134 F.3d 496, 501 (2d Cir. 1998). Rather, the court "is limited to determining whether the SSA's conclusions were supported by substantial evidence in the record and were based on a correct legal standard." *Talavera v. Astrue*, 697 F.3d 145, 151 (2d Cir. 2012) (citing 42 U.S.C. § 405(g)) (other citation omitted). The Commissioner's decision is "conclusive" if it is supported by substantial evidence. 42 U.S.C. § 405(g). "Substantial evidence means more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Moran v. Astrue*, 569 F.3d 108, 112 (2d Cir. 2009) (citations omitted).

**II.  Disability Standard**

To determine whether a claimant is disabled within the meaning of the Social Security Act, an ALJ follows a five-step sequential evaluation: the ALJ must determine (1) whether the claimant is engaged in substantial gainful work activity; (2) whether the claimant has any "severe" impairments that significantly restrict his or her ability to work; (3) whether the claimant's impairments meet or medically equal the criteria of any listed impairments in Appendix 1 of Subpart P of Regulation No. 4 (the "Listings"), and if they do not, what the claimant's residual functional capacity ("RFC") is; (4) whether the claimant's RFC permits him or her to perform the requirements of his or her past relevant work; and (5) whether the claimant's RFC permits him or her to perform alternative substantial gainful work which exists in the national economy in light of the claimant's age, education, and work experience. *See Parker v. City of New York*, 476 U.S.

467, 470-71 (1986); *Lesterhuis v. Colvin*, 805 F.3d 83, 85 n.2 (2d Cir. 2015); *see also* 20 C.F.R. § 416.920.

## DISCUSSION

### I.     The ALJ's Decision

The ALJ analyzed Plaintiff's benefits application using the process described above.  At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since her application date.  Tr. 16.  At step two, the ALJ assessed Plaintiff with the severe impairment of pedal neuropathy and the non-severe impairments of renal impairment and chest pain.  Tr. 16-17.  At step three, the ALJ found that none of Plaintiff's impairments met or medically equaled the criteria of any Listings impairment.  Tr. 17.  The ALJ then determined that Plaintiff retained the RFC to perform the full range of medium work.  Tr. 17.  At step four, the ALJ found that Plaintiff had no past relevant work.  Tr. 20.  At step five, the ALJ found that Plaintiff could adjust to other work that exists in significant numbers in the national economy.  Tr. 20.  Accordingly, the ALJ found that Plaintiff was not disabled.  Tr. 20.

### II.    Analysis

Plaintiff argues that the ALJ's RFC determination that Plaintiff could perform medium work was not supported by substantial evidence.  The Court agrees.

As an initial matter, the Court notes that, after Plaintiff applied for benefits, she began experiencing physical impairments not listed on her application.  As relevant here, in 2016, Plaintiff began experiencing pain in both of her wrists.  Plaintiff argues that the ALJ erred in determining that she could perform medium work—which involves the ability to lift up to 50 pounds at a time and frequently lift or carry up to 25 pounds—even though there was no evidence that Plaintiff could lift over 20 pounds.  She argues that this error is particularly harmful because,

at 57 years of age as of her alleged onset date, Plaintiff was considered an individual closely approaching advanced age, who would not need to show that she was incapable of all work and would be considered disabled even with an RFC of light work.  ECF No. 11-1 at 17.

In his decision, the ALJ briefly mentioned that Plaintiff said she had trouble lifting and that in November 2017 she reported twisting her wrist.  Tr. 18, 19.  Otherwise, however, the ALJ did not discuss Plaintiff's wrist pain at all.  He did not even discuss it at step two or find it to be a non-severe impairment, let alone a severe impairment.

The record evidence regarding Plaintiff's wrists shows that, on December 2, 2015, Plaintiff complained of right wrist pain which extended up her arm towards her elbow and into her fingers.  Tr. 358.  On exam, Nurse Practitioner Lauralee Sprague, Plaintiff's treating provider for approximately ten years, found a positive Phalan's test—which is suggestive of carpal tunnel syndrome—and ordered x-rays, prescribed Naprosyn, and provided Plaintiff with a wrist splint.  Tr. 359.  Plaintiff's x-rays revealed mild narrowing of the scaphoid trapezium joint with some eburnation of the scaphoid.  Tr. 252.

On August 2, 2016, NP Sprague treated Plaintiff for left writ pain after she bent it.  Tr. 349.  On exam, NP Sprague found point tenderness of the left wrist over ulnar stylus and surrounding soft tissue, a limited range of motion of the left hand, and slight edema of the left wrist and fading ecchymosis (discoloration of the skin resulting from bleeding underneath).  Tr. 349.  NP Sprague prescribed Naprosyn and a wrist splint and recommended an MRI if the condition did not improve.  Tr. 350.

On March 6, 2017, physician assistant Mark Orlowski at Excelsior Orthopaedics treated Plaintiff for ongoing left index finger pain which was exacerbated in February 2017 after an injury.  Tr. 416.  Plaintiff described her pain as burning and throbbing at a level of 5/10 which was

continuous and aggravated by activity.  Tr. 416.  On exam, there was swelling at PIP joint, mostly radial, and no range of motion of the left index finger.  Tr. 417.  PA Orlowski buddy-taped the middle and index fingers together and indicated the swelling would likely take months to resolve. Tr. 417.

On November 28, 2017, NP Sprague treated Plaintiff again for right wrist pain.  Tr. 466. Plaintiff reported that she recently had been helping a friend out of a wheelchair and twisted her right wrist.  Tr. 466.  Her pain did improve using Naprosyn.  Tr. 466.  On exam, there was mild tenderness with palpitation on the palmar and dorsal surface of the right wrist.  Tr. 466.  NP Sprague directed Plaintiff to "[a]void heavy lifting/overuse until completely healed."  Tr. 467.

On January 8, 2018, NP Sprague saw Plaintiff again for complaints of persistent right wrist pain and intermittent swelling.  Tr. 463.  NP Sprague recommended that she continue using ice and take Naprosyn.  Tr. 464.  Right wrist x-rays on January 8, 2018 revealed mild degenerative disease of the radiocarpal joint.  Tr. 480.

NP Sprague completed two RFC opinion forms for Plaintiff.  In August 2016, she opined that Plaintiff could lift and carry up to 20 pounds occasionally and ten pounds frequently in an eight-hour workday.  Tr. 333.  In October 2017, she opined that Plaintiff could only lift and carry up to ten pounds both occasionally and frequently in an eight-hour workday.  Tr. 462.  The ALJ rejected NP Sprague's opinions because her 2017 opinion was more restrictive than her 2016 opinion "with no intervening changes."  Tr. 19.  But the ALJ gave no explanation for rejecting NP Sprague's 2016 opinion.

Plaintiff's own testimony was that she could lift a gallon of milk, but it was sometimes difficult.  Tr. 37-38.  She could handle lifting a little more than that, but not more than 20 pounds.

5

Tr. 33, 38. At the hearing, her attorney argued that her limit was between ten and 20 pounds. Tr. 48-49.

The Court acknowledges that the record as to Plaintiff's wrist pain is somewhat weak. The pain was conservatively treated, and medication seemed to help. But the pain was persistent, there were some objective findings substantiating the pain, and Plaintiff's healthcare provider of approximately ten years imposed limitations on her ability to lift and carry that are inconsistent with the ability to perform medium work. The ALJ's perfunctory dismissal of NP Sprague's opinions and his failure to discuss Plaintiff's wrist pain in his decision leaves the Court uncertain as to whether he adequately considered that impairment both at step two and in crafting his RFC. In light of Plaintiff's testimony and NP Sprague's opinion that Plaintiff could only lift and carry between ten and 20 pounds, the Court finds that the ALJ erred by failing to consider Plaintiff's wrist pain at step two and by determining that Plaintiff could perform medium work when there was no evidence that she could lift over 20 pounds, let alone 25 to 50 pounds. *See Parker-Grose v. Astrue*, 462 F. App'x 16, 18 (2d Cir. 2012) (summary order) (holding that, even where the ALJ found that functional limitations were mild and only minimally affected plaintiff's ability to work, the ALJ erred by not taking the restrictions into account when determining plaintiff's RFC because an "RFC determination must account for limitations imposed by both severe and nonsevere impairments."); *Benoit v. Saul*, No. 3:19-cv-00443 (WIG), 2019 U.S. Dist. LEXIS 197483, at *9 (D. Conn. Nov. 14, 2019) (noting that the "analysis at step two is a threshold test designed to screen out de minimis" or "totally groundless claims"); *Monroe v. Berryhill*, 2018 U.S. Dist. LEXIS 124675, at *55-56 (S.D.N.Y. July 24, 2018) (explaining that "the threshold for establishing a severe impairment at step two is extremely low"); *see also Brian O. v. (ATB) Comm'r of Soc. Sec.*, No. 1:19-CV-983, 2020 U.S. Dist. LEXIS 101320, at *16 (N.D.N.Y. June 10, 2020)

(collecting cases holding that an ALJ cannot use the record's silence as to a particular function to determine that the claimant can perform that function).

Accordingly, the Court finds that remand is required.

## CONCLUSION

For all of the reasons stated, Plaintiff's Motion for Judgment on the Pleadings, ECF No. 11, is GRANTED, the Commissioner's motion, ECF No. 19, is DENIED, and this matter is REMANDED to the Commissioner for further administrative proceedings. The Clerk of Court is directed to enter judgment and close this case.

IT IS SO ORDERED.

Dated: July 31, 2020
      Rochester, New York

                                      HON. FRANK P. GERACI, JR.
                                      Chief Judge
                                      United States District Court